THOMAS, Judge.
K.M. (“the mother”) and J.H. (“the father”) are the divorced parents of L.H. and B.H. (“the children”). The mother and the father were divorced in St. Clair County in February 2009; the mother was awarded custody of the children, and she and the children moved to Etowah County shortly thereafter. In May 2009, the Eto-wah County Department of Human Resources (“Etowah DHR”) removed the children from the custody of the mother based on allegations of physical abuse of the children by the mother’s boyfriend and based on the mother’s cocaine use. Eto-wah DHR filed dependency petitions regarding the children in the Etowah Juvenile Court; those petitions were assigned case numbers JU-09-200.01 and JU-09-201.01. The children were found to be dependent by that court in June 2009, and the father was awarded custody of the children in March 2010.
In December 2011, the mother sought in the Etowah Juvenile Court a modification of the judgments awarding the father custody; in her petitions, the mother requested standard visitation with the children. Those modification petitions were assigned case numbers JU-09-200.02 and JU-09-201.02.[1] The parties reached an agreement regarding the mother’s visitation, which was incorporated into a judgment in November 2012.
Sometime in November or December 2012, N.M. (“the paternal grandmother”) reported seeing bruises on B.H. to the St. Clair Department of Human Resources (“St. Clair DHR”), which opened an investigation into the allegations. St. Clair DHR entered into a safety plan with the father, and the children were placed with the paternal grandmother, who resides in St. Clair County. The paternal grandmother also filed dependency petitions regarding the children in the St. Clair Circuit Court in December 2012. No proceedings have been held on those petitions, presumably because they were not filed in the appropriate court. See Ala.Code 1975, § 12-15-114(a) (providing that the juvenile courts have exclusive, original jurisdiction over proceedings in which a child is alleged to be dependent).
The mother filed a petition in February 2013 in the Etowah Juvenile Court seeking to hold the father in contempt for failing to permit her to visit with the children. At that time, she filed an application to proceed in forma pauperis; in her affidavit in support of her application, the mother listed her address, which was located in Madison County. At the hearing on the mother’s petition on March 7, 2013, the father *1090 testified that the children were no longer in his custody and that they had been placed with the paternal grandmother pursuant to a safety plan after allegations of physical abuse were made against him. Also on March 7, 2013, based on the information that the father had been accused of physically abusing the children, the mother filed a “motion” seeking custody of the children in the Etowah Juvenile Court. The Etowah Juvenile Court, based on the testimony of the father at the contempt hearing, awarded the mother temporary custody of the children on March 7, 2013.
The paternal grandmother, who was not a party to the actions in the Etowah Juvenile Court, filed a motion to dismiss or to transfer the actions to the St. Clair Juvenile Court and a petition seeking to have the children declared dependent and/or seeking grandparent visitation in the Eto-wah Juvenile Court on March 21, 2013. The Etowah Juvenile Court denied the paternal grandmother’s motion to transfer the actions, noting that the paternal grandmother was not a party to the actions. The paternal grandmother then moved to intervene in the Etowah Juvenile Court actions, seeking a determination of dependency and an award of custody of the children; in her motion to intervene, the paternal grandmother again sought a transfer of the actions to the St. Clair Juvenile Court. The Etowah Juvenile Court permitted the paternal grandmother to intervene, but it denied her motion seeking to transfer the actions to St. Clair Juvenile Court on April 15, 2013.
The paternal grandmother filed a petition for the writ of mandamus in this court on April 18, 2013. She argues that the Etowah Juvenile Court was required to transfer the actions to the St. Clair Juvenile Court because none of the parties or the children reside in Etowah County and, thus, she contends, venue is no longer proper there.
We will first address the mother’s challenge to our jurisdiction over the paternal grandmother’s mandamus petition. Generally, a petition for the writ of mandamus in a juvenile case must be filed within 14 days of the date of the entry of the order from which the petitioner seeks relief. Ex parte A.E.Q., 102 So.3d 388, 391 (Ala.Civ.App.2012); Rule 21(a)(3), Ala. R.App. P. The mother challenges the timeliness of the paternal grandmother’s mandamus petition, arguing that the petition was filed more than 14 days after the denial of her initial motion seeking a transfer of the actions. However, when she filed her first motion seeking a transfer of the actions, the paternal grandmother was not a party to the actions. As a nonparty, she had no standing to seek a transfer of the actions. See Ala.Code 1975, § 6-3-21 (permitting a defendant in a civil action to move for a change of venue); Rule 82(d)(1), Ala. R. Civ. P. (permitting a defendant to seek the transfer of an action filed in the wrong venue to a proper venue). Once the paternal grandmother was permitted to intervene, she had standing to seek a transfer of the actions. Thus, she timely brought her petition on April 18, 2013, three days after the Etowah Juvenile Court entered its April 15, 2013, order permitting her to intervene but denying her motion seeking to transfer the actions.
We begin our analysis of the paternal grandmother’s petition by recognizing that
‘“[a] petition for the writ of mandamus is the appropriate means by which to challenge a trial court’s order regarding a change of venue. Ex parte Sawyer, 892 So.2d 898, 901 (Ala.2004). The writ of mandamus is an extraordinary remedy; it will not be issued unless the *1091 petitioner shows “ ‘ “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (B) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’ ” Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000) (quoting Ex parte Gates, 675 So.2d 371, 374 (Ala.1996)); Ex parte Pfizer, Inc., 746 So.2d 960, 962 (Ala.1999).’ ”
Ex parte Vest, 68 So.3d 881, 884 (Ala.Civ.App.2011) (quoting Ex parte Children’s Hosp. of Alabama, 931 So.2d 1, 5-6 (Ala.2005)). Further, “ ‘[t]he question of proper venue for an action is determined at the commencement of the action.’ ... ‘If venue is not proper at the commencement of the action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper.’ ” Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002) (quoting Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001), and Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999)).
The paternal grandmother argues that the Etowah Juvenile Court is not the proper venue for the mother’s custody-modification action. She contends that, pursuant to Ala.Code 1975, § 12-15-302(c), the mother’s custody-modification action should have been filed in the St. Clair Juvenile Court. The statute governing venue in dependency or termination-of-parental-rights actions reads as follows:
“(a) Dependency proceedings shall be commenced in the county where the child resides, in the county where the child is present when the proceedings are commenced, or in the county where the acts that are the basis of the dependency petition occurred.
“(b) Regardless of the county where the child currently resides, when a petition is filed seeking to modify an award of custody or visitation pursuant to an adjudication of dependency, and one of the individuals who was a party to the original proceeding still resides in the county of the juvenile court of original jurisdiction, the petition shall be filed in the juvenile court of the original jurisdiction.
“(c) When a petition is filed seeking to modify an award of custody or visitation pursuant to an adjudication of dependency in which all parties to the original action, including the child, no longer reside in the county of original jurisdiction, the petition shall be filed in the county where the child resides at the time the petition is filed. The petition shall be accompanied by a certified copy of the most recent order to be modified.
“(d) For purposes of this section, county where the child resides means the county in which the child and legal custodian have established legal residence or have resided for six or more months of a calendar year. This term shall not include placements by a state department or agency.”
§ 12-15-302.
Because the attachments to the paternal grandmother’s petition support the conclusion that none of the parties or the children reside in Etowah County and that the children reside in St. Clair County, it would appear that, pursuant to § 12 — 15—302(c), the mother’s March 2013 “motion” requesting a modification of custody should have been filed in the St. Clair Juvenile Court. However, the mother’s March 2013 “motion” requesting a modification of custody was, in effect, an amendment to her January 2013 contempt petition. See Rule 15(a), Ala. R. Civ. P. *1092 (governing the amendment of pleadings).[2] Furthermore, based on the Etowah Juvenile Court’s recitation of the history of these proceedings in its order denying the paternal grandmother’s first motion seeking a transfer of the actions, the admission by the father relating to the abuse allegations at the contempt hearing prompted that court to award the mother custody, indicating that the mother’s “motion” may not have been necessary and that the parties had tried the temporary-custody issue by consent at the contempt hearing. See Rule 15(b), Ala. R. Civ. P. (permitting amendments to conform to the evidence presented at trial).
The mother’s contempt petition was properly filed in the Etowah Juvenile Court, because “a contempt proceeding ordinarily can be instituted in the court that issued the order which allegedly was violated. Such a proceeding normally cannot be entertained by any other court.” 17 C.J.S. Contempt § 105 (2011) (footnote omitted); accord 17 Am.Jur.2d Contempt § 149 (2004) (“Venue is fixed and remains with the court in which contempt is committed, or whose authority is defied. Statutes providing for a change of venue in criminal or civil actions or proceedings are generally construed not to apply to contempt proeeedings.”(footnotes omitted)). Section 12-15-302(c) states that when none of the parties to the original action reside in the county in which the original judgment was entered, an action seeking to modify a custody award pursuant to a dependency adjudication should be brought in the county in which the child lives. The statute does not address where an enforcement action should be brought. In contrast, the statute governing venue of actions seeking to modify child custody, child support, or visitation, Ala.Code 1975, § 30-3-5, includes enforcement actions in its description of those actions whose venue is proper either in the court that rendered the original judgment or in the court located in the county in which the custodial parent and the child reside. Because § 12-15-302(c) does not mention enforcement actions, by its plain language it can apply only to modification actions. See Ex parte T.B., 698 So.2d 127, 130 (Ala.1997) (“When the language of a statute is plain and unambiguous, as in this case, courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.”).
Although no Alabama case has specifically decided where venue lies for a contempt action, other states have considered the issue and have concluded that only the contemned court may conduct a contempt proceeding and punish the contemnor. See, e.g., Culpepper v. State, 516 So.2d 485, 487 (Miss.1987); Ogletree v. Watson, 223 Ga. 618, 619, 157 S.E.2d 464, 465 (1967); and Mayhew v. Mayhew, 52 Tenn.App. 459, 468, 376 S.W.2d 324, 328 (1963). The reasoning behind this rule has been explained thusly:
*1093 “A proceeding for contempt springs out of a litigation instituted in a particular court. Its principal object is to secure obedience to the orders of that court, by punishing as a contempt disobedience thereof. It is the court whose judgment or order has been defied which must try the contempt and pronounce judgment. ...
“If the place of the trial for a criminal contempt must be in the district where the acts constituting it were committed, then where such acts were committed in a different district than that of the court whose order had been contemned, such court would be powerless to deal punitively with the violation of its injunctive orders, and the trial and punishment of such contempt would have to be by a different court from that whose order had been defied. This would clearly be an alteration of the entire idea of a contempt, and in derogation of the power of a court to deal with violators of its orders. The essential act of contempt is the disrespect shown to the order of the court and the disobedience thereof.”
Dunham v. United States ex rel. Kansas City S. Ry. Co., 289 F. 876, 378 (5th Cir. 1923). Because we have found no statute governing venue of contempt petitions, we conclude that, in the absence of a contrary statutory provision like § 30-3-5, venue of a contempt action lies in the court from which the judgment sought to be enforced was issued.
Because we have determined that venue of the mother’s contempt claim was proper in the Etowah Juvenile Court, we must now determine whether the amendment to add her custody-modification claim compels a change of venue. Rule 82(c), Ala. R. Civ. P., provides that,
“[w]here several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22, and 24, [Ala. R. Civ. P.,] as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties.”
As noted above, venue is determined at the commencement of an action, and the mother’s January 2013 contempt petition properly instituted the action in the Etowah Juvenile Court. Venue was proper in the Etowah Juvenile Court because it was the court whose judgment the mother alleged the father had violated. Because Rule 82 provides that venue remains proper if it is proper as to one claim made in the action, regardless of whether venue is proper as to additional claims or additional parties, the paternal grandmother has not established a clear legal right to a transfer of the actions. Accordingly, we deny her petition for the writ of mandamus. PETITION DENIED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The pleadings, motions, and orders included as exhibits to the mandamus petition contain both case numbers, indicating that the actions were consolidated or that the pleadings, motions, and orders were filed in both actions. For ease of reading and simplicity, we will hereinafter refer to the pleadings, motions, and orders filed in the proceedings below as if they were filed in a single proceeding.

. We note that under Rule 15(a) a party must seek leave of court to amend a complaint less than 42 days before trial. Although an amendment served without leave of court is without legal effect, " ‘an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought.' " Image Marketing, Inc. v. Florence Television, L.L.C., 884 So.2d 822, 826 (Ala.2003) (quoting Hoover v. Blue Cross & Blue Shield of Alabama, 855 F.2d 1538, 1544 (11th Cir.1988)). Based on the exhibits to the mandamus petition, it appears that, if leave to amend was not properly sought by the mother, the Etowah Juvenile Court was inclined to grant such leave, and the mother’s amendment, which was filed on the day of the contempt hearing, was therefore legally effective.